UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE BOGAERT,

        Plaintiff,

                                      File No.  1:08-CV-687

v.

                                        HON. ROBERT HOLMES BELL

TERRI LYNN LAND, individually and in
her official capacity as Michigan Secretary
of State,

        Defendant,

ANDREW DILLON, WAYNE COUNTY
CLERK CATHY M. GARRETT, and
WAYNE COUNTY ELECTION
COMMISSION,

        Intervenors.

_____/

**O P I N I O N**

      This matter is before the Court on Plaintiff Rose Bogaert's motion for a preliminary

injunction.  (Dkt. No. 2, Mot. for Prelim. Inj.)  Plaintiff is the sponsor of an effort to place

a recall vote against State Representative Andrew Dillon on the November 4, 2008, general

election ballot.   Defendant Terri Lynn Land, in her capacity as Secretary of State,

determined that Plaintiff's recall effort did not gather a sufficient number of signatures after

excluding signatures gathered in violation of M.C.L. § 168.957.  Michigan Compiled Laws

§ 168.957 requires recall petition circulators to be registered to vote and to be residents of

the legislative district of the official to be recalled.  Plaintiff seeks a preliminary injunction ordering Defendant to restore signatures that were stricken from the petition to recall Representative Dillon pursuant to M.C.L. § 168.957 solely because of the petition circulator's out-of-district residence or lack of voter registration.  Plaintiff contends that the district resident and registered voter requirements of M.C.L. § 168.957 violate the First Amendment of the U.S. Constitution.  For the reasons that follow, the Court will grant a preliminary injunction as to the application of M.C.L. § 168.957.

## I. Background

State Representative Andrew Dillon represents the 17th House District in the Michigan House of Representatives.  He is also the Speaker of the House.  Representative Dillon is an intervenor in this lawsuit.  Plaintiff is a resident of the 17th House District. Defendant is the Michigan Secretary of State.  Defendant, in her capacity as the Michigan Secretary of State, is charged with determining the sufficiency of signatures appearing on all recall petitions submitted to her office.  Intervenor Wayne County Election Commission has certain responsibilities related to the administration of elections in Wayne County. Intervenor Wayne County Clerk Cathy M. Garrett is a member of the Wayne County Election Commission.   The Court will refer to Intervenors Wayne County Election Commission and Wayne County Clerk Garrett as the Wayne County Intervenors.

On October 1, 2007, Representative Dillon voted in favor of an increase in the state income tax and to extend the state sales tax to certain services.  Based on this vote, Plaintiff

decided to sponsor a recall petition drive.  On October 12, 2007, Plaintiff filed a recall petition against Representative Dillon with the Wayne County Clerk.  Under M.C.L. § 168.952(3) the Wayne County Election Commission is charged with determining if the recall petition is sufficiently clear.  On November 1, 2007, the Wayne County Election Commission determined that the petition to recall Representative Dillon was not sufficiently clear and rejected the petition.  Under M.C.L. § 168.952(6), Plaintiff filed an appeal of the Wayne County Election Commission's decision in Wayne County Circuit Court.  On January 18, 2008, a Wayne County Circuit Court Judge approved Plaintiff's recall petition as being sufficiently clear under M.C.L. § 168.952(3).   Representative Dillon was a defendant in the Wayne County Circuit Court case and he appealed the Circuit Court's decision to the Michigan Court of Appeals.  On July 17, 2008, the Michigan Court of Appeals dismissed the case with a written order that explained as follows:

> On the Court's own motion, it is ordered that the within appeal is dismissed as MOOT.

> On June 5, 2008, the Secretary of State determined that the recall petition at issue in the present appeal contains insufficient signatures to be placed on the ballot.  This Court denied a request for mandamus.  *Bogaert v. Secretary of State*, unpublished order of the Court of Appeals, entered June 10, 2008 (Docket No. 285826).  The Michigan Supreme Court also denied leave to appeal.  *Bogaert v. Secretary of State*, __ Mich __; __ NW2d __ (Docket No. 136656, decided June 13, 2008). As a result of these decisions, the recall proposal at issue in this case will not be on the ballot, making it unnecessary for us to address the arguments related to its language. Accordingly, this appeal is dismissed as moot.

(Dkt. No. 16, Wayne County Intervenors' Resp., Ex. 2, *Bogaert v. Wayne County Election Comm'n*, Dkt. No. 284098, 284101, order at 1 (Mich. Ct. App. July 17, 2008).)

Plaintiff, and other supporters of the recall petition, had ninety days between January 18, 2008, and May 2, 2008, to collect 8,724 valid signatures and submit them to the Michigan Secretary of State.  On May 1, 2008, Plaintiff submitted 15,737 signatures to the Michigan Secretary of State's Bureau of Elections.   Defendant made a preliminary determination that 8,224 of the submitted signatures were valid.  Representative Dillon and other opponents of the recall had until June 2, 2008, to submit challenges to the Secretary of State's initial determination.  On June 5, 2008, Defendant made a final determination that 7,948 valid signatures had been submitted in support of the recall campaign, which is 776 short of the 8,724 required to place the recall on the ballot.  (Dkt. No. 1, Compl., Ex. 2, Letter from Terri Lynn Land, Mich. Sec'y of State, Mich. Dep't of State, to Matthew G. Davis (June 5, 2008) 2.)  Defendant rejected 5,736 signatures for reasons not at issue in the instant lawsuit.  (*Id.* at 2.)  However, Defendant rejected 2,053 signatures based on the recall petition circulator requirements of M.C.L. § 168.957.  (*Id.*)  Plaintiff's signature in support of the recall petition was among the signatures rejected by Defendant based on the recall petition circulator requirements. (Compl. ¶ 40; Rep. Dillon's Answer, Ex. 6, Recall Petition - No. 01476.)

On June 6, 2008, Plaintiff filed an emergency complaint with the Michigan Court of Appeals seeking a writ of mandamus to compel the Secretary of State to count the signatures

rejected based on the recall petition circulator requirements.  On June 10, 2008, by written order, without an accompanying written opinion, the Michigan Court of Appeals denied Plaintiff's request for a writ of mandamus.  (Wayne County Intervenors' Resp., Ex. 4, *Bogaert v. Sec'y of State*, Dkt. No. 285826, order at 1 (Mich. Ct. App. June 10, 2008).)  The Michigan Court of Appeals decision stated:

> The Court orders that the motion for immediate consideration is GRANTED.
>
> . . .
>
> The motion for oral argument is DENIED.
>
> The complaint for mandamus is DENIED.

(*Id.*)  Plaintiff sought leave to appeal to the Michigan Supreme Court.  On June 11, 2008, the Michigan Supreme Court issued the following order:

> On order of the Court, the motion for immediate consideration is GRANTED. The application for leave to appeal is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

*Bogaert v. Sec'y of State*, 481 Mich. 890, 890, 749 N.W.2d 743 (2008).  On June 13, 2008, the Michigan Supreme Court issued a second order:

> On order of the Court, the motion for immediate consideration is GRANTED. The application for leave to appeal the June 10, 2008 order of the Court of Appeals is considered, and it is DENIED, because the Court is not persuaded that the questions presented should be reviewed by this Court.

*Bogaert v. Sec'y of State*, 481 Mich. 899, 899, 749 N.W.2d 751 (2008).

Plaintiff filed this federal lawsuit on July 18, 2008.  Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of her rights under the First Amendment to the U.S. Constitution.  Plaintiff asserts her § 1983 claim against Defendant in both her official and individual capacities.  Plaintiff seeks a preliminary injunction ordering Defendant to:

> (1) restore the 2,053 stricken signatures to Plaintiff's petition; (2) declare the petition sufficient; and (3) call an election for the recall of Rep. Andy Dillon for the November 4, 2008 general election.

(Mot. for Prelim. Inj. 6.)

On July 25, 2008, Representative Dillon sought to intervene.  On July 28, 2008, the Wayne County Intervenors sought to intervene.  On July 29, 2008, the Court granted Representative Dillon's and the Wayne County Intervenor's motions to intervene.  (Dkt. No. 23, 07/29/2008 Mem. Op.)  The Court granted the motions to intervene before Plaintiff or Defendant had an opportunity to respond to the motions to intervene.  In her briefing prior to the hearing on the preliminary injunction Plaintiff indicated that she intended to file motions for reconsideration as to the Court's grant of the motions to intervene.  (Dkt. No. 24, Pl.'s Reply to Intervenors 3 n.1.)  However, at the preliminary injunction hearing and in a subsequent letter filed with the Court, Plaintiff indicated that she does not oppose intervention by the Wayne County Intervenors.  (Dkt. No. 26, Letter from Edward D. Greim, Pl.'s Attorney, to Janet Anderson-Davis, Asst. Corp. Counsel, Wayne County Election Comm'n (Aug. 7, 2008) 1.)

The Court held a preliminary injunction hearing on July 31, 2008.  At the hearing the Court indicated that the parties could file supplemental briefs within fourteen days of the hearing.  All of the parties elected to file such briefs.  The Wayne County Intervenors also filed a response to Plaintiff's supplemental brief.

## II.  Subject-Matter Jurisdiction

### A.   Plaintiff's claims are not moot

Wayne County Intervenors contend that this case is moot because even if Plaintiff did gather a sufficient number of signatures for the recall election, Michigan election law would operate to bar a recall election from being placed on the November 4, 2008, general election ballot.  "Article III of the Constitution limits federal 'Judicial Power,' that is, federal-court jurisdiction, to 'Cases' and 'Controversies.'"  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980).  "When the parties no longer have a 'presently existing legally cognizable interest in the outcome of the litigation,' a case is moot."  *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 811 (6th Cir. 2007) (citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).  "Generally, a party lacks a sufficient present interest in the outcome of a case when a court is unable to effectuate any relief in the event of a favorable decision."  *Id.* (citing *Murphy*, 455 U.S. at 481-82).

Wayne County Intervenors contend that Plaintiff's lawsuit is moot because the recall petition is no longer valid under M.C.L. § 168.952(7).  Michigan Compiled Laws § 168.952(7) provides:

> A petition that is determined to be of sufficient clarity under subsection (1) or, if the determination under subsection (1) is appealed pursuant to subsection (6), a petition that is determined by the circuit court to be of sufficient clarity is valid for 180 days following the last determination of sufficient clarity under this section.  A recall petition that is filed under section 959 or 960 after the 180-day period described in this subsection is not valid and shall not be accepted pursuant to section 961.  This subsection does not prohibit a person from resubmitting a recall petition for a determination of sufficient clarity under this section.

M.C.L. § 168.952(7). Wayne County Intervenors assert that as a result of the Wayne County Circuit Court having held the recall petition to be sufficiently clear on January 18, 2008, the recall petition ceased to be valid 180 days later, on July 16, 2008.  Based on this proposed application of M.C.L. § 168.952(7), even if the Court held that M.C.L. § 168.957 violated the First Amendment and that the Secretary of State should count the 2,053 signatures that were rejected, the recall election against Representative Dillon would still not appear on the November 4, 2008, general election ballot because the recall petition ceased to be valid on July 16, 2008.  Plaintiff contends that the recall petitions were filed when they were submitted to the Secretary of State on May 1, 2008.

In order to determine whether the recall petition is valid, the Court must determine when a recall petition is considered to have been filed under M.C.L. § 168.952(7).  "Each section of an act is to be read with reference to every other section so as to produce an harmonious whole."  *Smeets v. Genesee County Clerk*, 193 Mich. App. 628, 634, 484 N.W.2d 770 (1992) (citing *Detroit v. Detroit Police Officers Ass'n*, 408 Mich. 410, 481, 294 N.W.2d 68 (1980) (plurality opinion), and *Dep't of Treasury v. Psychological Res., Inc.*,

147 Mich. App. 140, 146, 383 N.W.2d 144 (1985)). So the Court must review the other sections of Chapter XXXVI of Chapter 168 of the Michigan Compiled Laws, which provides the process for recall under Michigan law.  Michigan Compiled Laws § 168.961[1]

---

[1]Michigan Compiled Laws § 168.961 provides:

(1) A recall petition shall be filed with the filing officer provided in section 959 or 960.  The filing official shall give a receipt showing the date of filing, the number of petition sheets filed, and the number of signatures claimed by the filer. This shall constitute the total filing, and additional petition sheets for this filing shall not be accepted by the filing official.

(2) Within 7 days after a recall petition is filed, the filing official with whom the petition was filed shall examine the recall petition. The filing official shall determine if the recall petition is in proper form and shall determine the number of signatures of the petition. In determining the number of signatures, the filing official shall not count signatures on a petition sheet if 1 or more of the following apply:

(a) The execution of the certificate of circulator is not in compliance with this act.

(b) The heading of the petition sheet is improperly completed.

(c) The reasons for recall are different than those determined by the board of county election commissioners to be of sufficient clarity to enable the officer whose recall is sought and the electors to identify the course of conduct which is the basis for this recall.

(d) The signature was obtained before the date of determination by the board of county election commissioners or more than 90 days before the filing of the petition.

(3) If the filing official determines that the form of the petition is improper or that the number of signatures is less than the minimum number required in section 955, the filing official shall proceed as provided in section 963(1).

(continued...)

outlines the administrative steps to determine if a recall petition has gathered a sufficient number of signatures to be placed on the ballot. M.C.L. § 168.961. The process outlined in M.C.L. § 168.961 is initiated whenever a recall petition is "filed with the filing officer . . . ." M.C.L. § 168.961(1). Michigan Compiled Laws § 168.961(2) requires the filing official to begin this process "[w]ithin 7 days after a recall petition is filed . . . ." M.C.L. § 168.961(2). In consideration of the sequence of administrative steps outlined in

---

[1](...continued)

(4) If the filing official determines that the number of signatures is in excess of the minimum number required in section 955, the filing official shall determine the validity of the signatures by verifying the registration of signers pursuant to subsection (6) and may determine the genuineness of signatures pursuant to subsection (7) . . . .

. . . .

(6) The qualified voter file shall be used to determine the validity of petition signatures by verifying the registration of signers. If the qualified voter file indicates that, on the date the elector signed the petition, the elector was not registered to vote, there is a rebuttable presumption that the signature is invalid. If the qualified voter file indicates that, on the date the elector signed the petition, the elector was not registered to vote in the city or township designated on the petition, there is a rebuttable presumption that the signature is invalid.

(7) The qualified voter file shall be used to determine the genuineness of a challenged petition signature appearing on a recall petition. Signature comparisons shall be made with the digitized signature in the qualified voter file. If the qualified voter file does not contain a digitized signature of an elector, the official with whom the recall petition was filed shall compare the challenged signature to the signature on the master card.

M.C.L. § 168.961.

10

M.C.L. § 168.961, "filed" can mean nothing other than the process of delivering the petition sheets to the filing official as set forth in M.C.L. § 168.961(1). Construing "filed" to mean anything else would create uncertainty. The process outlined in M.C.L. § 168.961 is initiated when the recall petition is filed. Thus, if filing encompasses more than the delivery of the petition sheets to the filing official, then the administrative process would be re-started by each successive "filing." In the event of such re-starts, a recall petition would be re-submitted to the administrative steps of M.C.L. § 168.961. If several steps had been completed before the second "filing," then those administrative steps would be repeated without any discernible purpose. In interpreting a statute the Court "will avoid interpretations that produce absurd results." *Jennings v. Southwood*, 446 Mich. 125, 133, 521 N.W.2d 230 (1994). *See also United States v. Branson*, 21 F.3d 113, 116 (6th Cir. 1994) ("[Statutes] should be interpreted to 'avoid untenable distinctions and unreasonable results whenever possible.'" (quoting *Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 71 (1982)). Thus, to a give a plausible meaning to the process outlined in M.C.L. § 168.961, "filed" as used in M.C.L. § 168.952(7) must refer to the time when the petition sheets are delivered to the filing official as set forth in M.C.L. § 168.961(1).

Wayne County Intervenors direct the Court to *Ebbers v. Secretary of State*, No. 283782, 2008 WL 2468629 (Mich. Ct. App. June 19, 2008) (unpublished), in support of their proposed application of M.C.L. § 168.952(7) to invalidate the petition in this case. Although *Ebbers* held that the plaintiffs' case was moot because of the 180-day requirement

11

of M.C.L. § 168.952(7), *Ebbers* does not support the Wayne County Intervenors' construction of M.C.L. § 168.952(7).  In *Ebbers* the plaintiffs had not yet filed any signatures with the filing officer under M.C.L. § 168.961(1), thus the Michigan Court of Appeals concluded that the case was moot because it would not be possible for the plaintiffs to gather the necessary number of signatures and complete the other necessary administrative tasks that remained in the eleven days before the expiration of the 180-day requirement of M.C.L. § 168.952(7).  *Ebbers*, 2008 WL 2468629, at *2.  Therefore, *Ebbers* does not support Wayne County Intervenors' construction of M.C.L. § 168.952(7).

Plaintiff's recall petition is demanding the recall of a state representative, so the filing officer is determined by M.C.L. § 168.959.  M.C.L. §§ 168.952(7), .959, .961(1).  Under M.C.L. § 169.959, "[p]etitions demanding the recall of . . . state . . .representatives in the state legislature . . . shall be filed with the secretary of state."  M.C.L. § 168.959.  Plaintiff filed the petition demanding a recall of Representative Dillon with Defendant on May 1, 2008.  The May 1, 2008, filing was within 180 days of the Wayne County Circuit Court holding that the recall petition is sufficiently clear, so the recall petition against Representative Dillon is valid under M.C.L. § 168.952(7).

Wayne County Intervenors make a similar argument based on M.C.L. § 168.961(2)(d).  In pertinent part M.C.L. § 168.961(2)(d) provides that "the filing official shall not count signatures on a petition sheet if . . . (d) The signature was obtained . . . more than 90 days before the filing of the petition."  M.C.L. § 168.961(2)(d).  Wayne County

Intervenors contend invalidating M.C.L. § 168.957 and then counting the valid signatures gathered would run afoul of the 90-day requirement in M.C.L. § 168.961(2)(d).   This contention fails for the same reason as Wayne County Intervenors' contention with respect to M.C.L. § 168.952(7) fails; the "filing" date for purposes of applying the 90-day requirement is the date Plaintiff delivered the petition sheets to Defendant, which was May 1, 2008.

Wayne County Intervenors next contend that placing a recall election on the November 4, 2008, general election ballot would violate the requirement of M.C.L. § 168.963(3) that a recall "election shall be held on the next regular election date that is not less than 95 days after the petition is filed."  M.C.L. § 168.963(3).  As the recall petition was filed on May 1, 2008, the 95-day requirement is undoubtedly met.   Wayne County Intervenors, however, contend that placing a recall against Representative Dillon on the November 4, 2008, general election ballot would force them to violate the "next regular election date" requirement.   Wayne County Intervenors contend that the "next regular election date" that was not less 95 days after the May 1, 2008, filing was the August 5, 2008, primary election, thus the "shall"  bars Wayne County Intervenors from placing the recall on the November 4, 2008, general election ballot.

In contrast to other provisions in Chapter XXXVI of Chapter 168 of the Michigan Compiled Laws, such as M.C.L. § 168.952(7),  § 168.963(3)  does not contain language invalidating the recall petition.   Rather, M.C.L. § 168.963(3) mandates a timetable for

13

election officials to act when they are handling a recall petition.  This suggests that in enacting M.C.L. § 168.963(3) the Michigan legislature did not intend a recall petition to be invalidated if an election official fails to comply with time requirements in the statute.

> "Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as directory, unless a noncompliance with their terms is expressly declared to be fatal, or will change or render doubtful the result. * * * Before election it is mandatory if direct proceedings for its enforcement are brought, but after election it should be held directory, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or the ascertainment of the result, or unless the provisions affect an essential element of the election, or it is expressly declared by the statute that the particular act is essential to the validity of the election, or that its omission will render it void."

*Richey v. Bd. of Ed. of Monroe County*,  346 Mich. 156, 166-67, 77 N.W.2d 361(1956) (omission in *Richey*) (quoting *Carnes v. Livingston County Bd. of Educ.*, 341 Mich. 600, 606, 67 N.W.2d 795 (1954)). *See also Gracey v. Grosse Pointe Farms Clerk*, 182 Mich. App. 193, 208-09, 452 N.W.2d 471 (1989) (*per curiam*).  Although no recall election has been held, construing M.C.L. § 168.963(3) to invalidate the recall petition because the recall was not placed on the August 5, 2008, primary ballot, would be to improperly penalize Plaintiff and those who validly signed the recall petition for the actions of election officials. *Gracy*, 182 Mich. App. at 208-09.  Moreover, as the Court previously noted, M.C.L. § 168.963(3) does not contain any language expressly invalidating a recall petition if it is not placed on the ballot for the "next regular election date."  Thus, the Court concludes M.C.L. § 168.963(3) does not bar the recall petition from being placed on the November 4, 2008, general election ballot.

Although not explicitly framed in terms of mootness, Defendant contends that a recall election against Representative Dillon is barred by the requirement of M.C.L. § 168.951 that "[a] petition shall not be filed against an officer during the last 6 months of the officer's term of office." M.C.L. § 168.951. This requirement, like the requirements in M.C.L. §§ 168.952(7) and 168.961(2)(d), is based on when the recall petition was filed. The recall petition against Representative Dillon was filed with Defendant on May 1, 2008, which is more than six months prior to the end of Representative Dillon's current term. Thus, M.C.L. § 168.951 does not bar a recall election against Representative Dillon from appearing on the November 4, 2008, general election ballot.

The Court has determined that the various provisions in Chapter XXXVI of Chapter 168 of the Michigan Compiled Laws identified by Defendant and Wayne County Intervenors, which address the timing of a recall election, do not bar the recall against Representative Dillon from being placed on the November 4, 2008, general election ballot. There is an actual case and controversy as those provisions do not preclude the recall from being placed on the general election ballot. Thus, Plaintiff's lawsuit and motion for a preliminary injunction are not moot.

**B.    The Court is not deprived of subject-matter jurisdiction by the Eleventh Amendment**

Defendant contends that the Eleventh Amendment bars the entirety of Plaintiff's claim. The Eleventh Amendment to the U.S. Constitution has been understood to confirm a two-part presupposition: "first, that each State is a sovereign entity in our federal system;

15

and second, that '[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent[.]'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (first modification in *Seminole Tribe*) (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)). Congress may abrogate state sovereign immunity when it unequivocally expresses its intent to abrogate state sovereign immunity pursuant to a valid exercise of power. *Id.* at 55. Congress did not abrogate state sovereign immunity in enacting 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Additionally, neither a state nor its officials are "persons" under § 1983. *Will*, 491 U.S. at 71. Under *Ex parte Young*, 209 U.S. 123 (1908), however, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). The exception to state sovereign immunity under *Ex parte Young* does not extend to retroactive relief. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984).

Defendant contends that the preliminary injunction sought by Plaintiff is not within the scope of *Ex parte Young*.[2] Defendant contends that *Ex parte Young* does not apply to

---

[2]Defendant also contends that the damages sought by Plaintiff are not within the scope of *Ex parte Young*; however, Plaintiff's request for damages is separate from Plaintiff's motion for a preliminary injunction. Therefore, the Court declines to resolve whether Plaintiff's request for damages is barred by the Eleventh Amendment as part of this opinion addressing Plaintiff's motion for a preliminary injunction.

Plaintiff's request for injunctive relief because Plaintiff's requested injunctive relief is retroactive.  Defendant argues that:

> The recall can only be placed on a future ballot by overturning past decisions of the Secretary of State.  Thus, jurisdiction over Bogaert's claims is barred by the Eleventh Amendment.

(Dkt. No. 34, Def.'s Supp. Br. 8 (footnote omitted).)

"Retroactive relief compensates the plaintiff for a past violation of his legal rights." *Doe v. Wigginton*, 21 F.3d 733, 736 (6th Cir. 1994) (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)).  "This compensation usually takes the form of money damages." *Id.* at 736-37.   However, "retroactive relief does not *necessarily* take the form of money damages." *Id.* at 737 n.2 (citing *Cory v. White*, 457 U.S. 85, 90 n.2 (1982)).   While retroactive relief certainly encompasses more than damages, it does not extend to the preliminary injunction sought by Plaintiff.  As the Sixth Circuit has explained, "when the relief sought is prospective injunctive relief that would 'merely compel[ ] the state officer['s] compliance with federal law in the future,' [*Doe* 21 F.3d at 737], then such a request 'is ordinarily sufficient to invoke the *Young* fiction.'" *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999) (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997)).   Therefore, consideration of Plaintiff's complaint with respect to the relief sought in the preliminary injunction is not barred by the Eleventh Amendment.

## C.   Consideration of Plaintiff's claims is not barred by the *Rooker-Feldman* doctrine

Defendant and Representative Dillon contend that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.  The *Rooker-Feldman* doctrine embodies the general rule that

only the Supreme Court can exercise appellate jurisdiction over state court decisions under

28 U.S.C. § 1257, and that district courts are accordingly without jurisdiction to review the

final determinations of a state court in judicial proceedings. *McCormick v. Braverman*, 451

F.3d 382, 389-92 (6th Cir. 2006) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923),

and *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462 (1983)).  In *Rooker* and

*Feldman*,

> the losing party in state court filed suit in federal court after the state
> proceedings ended, *complaining of an injury caused by the state-court
> judgment and seeking review and rejection of that judgment*.  Plaintiffs in both
> cases, alleging federal-question jurisdiction, called upon the District Court to
> overturn an injurious state-court judgment.

*McCormick*, 451 F.3d at 391-92 (quoting *Exxon Mobil Corp v. Saudi Basic Indus. Corp.*,

544 U.S. 280, 291-92 (2005)).  In circumstances where a plaintiff initiates a federal claim

after a state court decision 28 U.S.C. § 1257 does not

> stop a district court from exercising subject-matter jurisdiction simply because
> a party attempts to litigate in federal court a matter previously litigated in state
> court.  If a federal plaintiff "present[s] some independent claim, albeit one that
> denies a legal conclusion that a state court has reached in a case to which he
> was a party . . . , then there is jurisdiction and state law determines whether
> the defendant prevails under principles of preclusion."

*Saudi Basic*, 544 U.S. at 293 (modifications in *Saudi Basic*) (quoting *GASH Assocs. v.

Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).  In consideration of *Saudi Basic*, the

pertinent inquiry is whether the "source of injury" upon which Plaintiff bases her federal

claim is a state court judgment.  *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008).  "'If

the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would

prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.'" *Id.* (quoting *McCormick*, 451 F.3d at 394).

Defendant contends that the proceedings before the Secretary of State "were judicial in nature" and so the *Rooker-Feldman* doctrine in applicable based on those proceedings. (Def.'s Supp. Br. 3.)  The *Rooker-Feldman* doctrine has "no application to judicial review of executive action, including determinations made by a state administrative agency." *Verizon Md., Inc. v. Public Serv. Com'n of Md.*, 535 U.S. 635, 644 n.3 (2002).  Defendant has not cited any authority in support of the proposition that proceedings before the Michigan Secretary of State are judicial in nature.  Moreover, under the Michigan Constitution of 1963 the Secretary of State is part of the executive branch of the State of Michigan.  Mich. Const. art. V, §§ 3, 23, 26, 30.  Therefore, the *Rooker-Feldman* doctrine is inapplicable to the proceedings before the Secretary of State.

Defendant next contends that the *Rooker-Feldman* doctrine is applicable based on the Michigan Court of Appeals's order on June 10, 2008, and the Michigan Supreme Court's orders on June 11, 2008, and June 13, 2008.  Consequently, the Court must determine if one or all of those state court decisions are the source of Plaintiff's injury.  In *McCormick* the Sixth Circuit found the following examples from the Second Circuit's decision in *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77(2d Cir. 2005), instructive on the difference between a barred claim and a valid claim under *Rooker-Feldman*:

19

Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*McCormick*, 451 F.3d at 393-94 (quoting *Hoblock*, 422 F.3d at 87-88). One exception not encapsulated by these examples occurs when "a third party's actions are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself." *Id.* (citing *Hoblock*, 422 F.3d at 88). The Second Circuit distilled the foregoing examples into the following inquiry:

a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

20

*Hoblock*, 422 F.3d at 88.  Plaintiff only explicitly complains of an injury from Defendant's rejection of 2,053 signatures based on M.C.L. § 168.957.  No party contends that the Michigan Court of Appeals's order on June 10, 2008, or the Michigan Supreme Court's orders on June 11, 2008, and June 13, 2008, caused Defendant's rejection of the signatures.  Nor could any such contention be sustained.  These orders of the Michigan Court of Appeals and the Michigan Supreme Court do not mandate any action by Defendant.  The source of Plaintiff's injury is Defendant's rejection of 2,053 signatures based on M.C.L. § 168.957, so the *Rooker-Feldman* doctrine does not bar consideration of Plaintiff's lawsuit.

## III.  Preclusion

Defendant contends that Plaintiff's claim is precluded by the state-court litigation in *Ebbers v. Secretary of State*.  Plaintiff was not a party to the *Ebbers* litigation.  "'[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'"  *Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  "Under Michigan law, the party asserting preclusion bears the burden of proof."  *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004) (citing *Detroit v. Qualls*, 434 Mich. 340, 357-58, 454 N.W.2d 374 (1990)).

> A court must apply issue preclusion when 1) the parties in both proceedings are the same or in privity, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated in the first proceeding, 4) that issue was necessary to the judgment, and 5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue.

21

*Id.* (citing *Michigan v. Gates*, 452 N.W.2d 627, 630-31, 434 Mich. 146 (1990)).   "In Michigan, claim preclusion 'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'"   *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004) (quoting *Adair v. Michigan*, 470 Mich. 105, 680 N.W.2d 386 (2004)).   The arguments of the parties with respect to preclusion focus predominantly on whether Plaintiff is in privity with the *Ebbers* plaintiffs.   "To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert."   *Adair*, 470 Mich. at 122 (citing *Baraga Co. v. State Tax Comm'n*, 466 Mich. 264, 269-70, 645 N.W.2d 13 (2002)).   "The outer limit of the doctrine traditionally requires both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation."   *Id.* (quoting *Baraga Co.*, 466 Mich. 269-70).

The plaintiffs in *Ebbers* had been involved in an effort to recall State Representative Robert Dean, who represents the 75th State House District in the Michigan House of Representatives.   The plaintiffs in *Ebbers* challenged the validity of M.C.L. § 168.957.   The plaintiffs in *Ebbers*, like Plaintiff Bogaert, initiated the recall effort in response to Representative Dean's vote in favor of an increase in the state income tax and an extension of the state sales tax to certain services.   In *Ebbers* a Kent County Circuit Judge concluded

that M.C.L. § 168.957 is constitutional.  (Dkt. No. 19, Def.'s Resp. Br., Ex. 2, *Ebbers v. Sec'y of State of Mich.*, Case No. 08-00699-CZ, slip. op. at 20 (Kent County Cir. Ct. Feb. 14, 2008).)  On appeal the Michigan Court of Appeals dismissed the plaintiffs' claims as moot. *Ebbers*, 2008 WL 2468629, at *3. Defendant contends that Plaintiff is in privity with the plaintiffs in *Ebbers* because both recall efforts received financial support from the same entity, the Michigan Recall Committee.  In support of this Defendant offers an expenditure report from the Michigan Recall Committee, which shows the funds spent on the Dean and Dillon recalls, as well as payments made to Plaintiff's Counsel, Norman C. Witte.  (Def.'s Resp. Br., Ex. 3,  Mich. Recalls Org. - Expenditures Report.)  Defendant also notes that Attorney Witte represented both the plaintiffs in *Ebbers* and he represents Plaintiff.

Plaintiff acknowledges that her recall effort received funding from the Michigan Recall Organization, but she avers that she did not participate in or approve of the *Ebbers* lawsuit.  (Dkt. No. 35, Pl.'s Supp. Br., Ex. 1, Bogaert Aff. ¶¶ 12, 18, 19.)  Moreover, Plaintiff explicitly states that:

> I do not know any of the parties in that case.  I did not know the lawyers who prosecuted that case (my current lawyers) when they litigated that case before the trial court or filed and briefed their appeal.  I did not approve of, disapprove of, or voice any opinion regarding any aspect of that case.  Indeed, I have never done so.

(*Id.* at ¶ 18.) While both Plaintiff and the *Ebbers* plaintiffs received funding from the same organization, there is no evidence of any other relationship between Plaintiff and the *Ebbers* plaintiffs.  "Regarding private parties, a privy includes a person so identified in interest with

another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 12-13, 672 N.W.2d 351 (2003) (*per curiam*) (citing *Viele v. DCMA*, 167 Mich. App. 571, 580, 423 N.W.2d 270, *mod.* 431 Mich. 898, 432 N.W.2d 171 (1988), *on remand* 211 Mich. App. 458, 536 N.W.2d 276 (1995)).   While Defendant has offered evidence, and Plaintiff concedes, that the Dean and Dillon recalls share a funding source, no evidence has been offered that the *Ebbers* plaintiffs represented the same legal right as Plaintiff.

Plaintiff and the *Ebbers* plaintiffs both asserted a First Amendment challenge to M.C.L. § 168.957.   Plaintiff contends that a view of Michigan preclusion law that finds the similarity of the constitutional challenges alone sufficient to constitute privity is contrary to the Due Process Clause of the Fourteenth Amendment as applied in *Richards v. Jefferson County*,  517 U.S. 793 (1996).   "In *Richards*, the Court held that a state court's 'extreme' application of state res judicata principles to bar a 'stranger' to a previous judgment from pursuing her constitutional claims deprived that party of Fourteenth Amendment due process." *Bates v. Township of Van Buren*, 459 F.3d 731, 737 (6th Cir. 2006) (quoting *Richards*, 517 U.S. at 797, 802).   However, the Court need not reach that question because under the Michigan Supreme Court's decision in *Adair*, which addressed the "outer limit" of preclusion, 470 Mich. at 122, Plaintiff and the *Ebbers* plaintiffs are not in privity because they seek different remedies.   The remedies sought by Plaintiff and the *Ebbers* plaintiffs are

both premised on the unconstitutionality of M.C.L. § 168.957, but Plaintiff seeks a remedy tailored to the 2,053 signatures Defendant rejected based on M.C.L. § 168.957.  In constrast, the *Ebbers* plaintiffs had not yet submitted any signatures to the Secretary of State and were still in the process of gathering signatures, consequently, the *Ebbers* plaintiffs sought "preliminary and permanent injunctive relief and a judgment declaring portions of MCL 168.957 unconstitutional." *Ebbers v. Sec'y of State of Mich.*, Case No. 08-00699-CZ, slip. op. at 2 (Kent County Cir. Ct. Feb. 14, 2008).  Therefore, the *Ebbers* lawsuit does not have claim or issue preclusive effect with respect to Plaintiff.

### IV.  Laches

Wayne County Intervenors contend that Plaintiff's lawsuit is barred by laches.  "The doctrine of laches is a tool of equity that may remedy 'the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert.'" *Public Health Dep't v. Rivergate Manor*, 452 Mich. 495, 507, 550 N.W.2d 515 (1996) (quoting *Lenawee Co. v Nutten*, 234 Mich. 391, 396, 208 N.W. 613 (1926)).  Laches is "applicable in cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Id.* (citations omitted).  The Michigan Court of Appeals has explained in the context of applying laches to elections cases that:

> The state has a compelling interest in the orderly process of elections. Court[s] can reasonably endeavor to avoid unnecessarily precipitate changes that would result in immense administrative difficulties for election officials.

25

*New Democratic Coalition v. Austin*, 41 Mich. App. 343, 356-57, 200 N.W.2d 749 (1972) (*per curiam*) (citing *Reynolds v. Sims*, 377 U.S. 533 (1964)).  The administrative difficulties identified by Wayne County Intervenors with respect to laches largely duplicate the statute issues that the Court addressed with respect to mootness.  *See supra* Section II.A - *Plaintiff's claims are not moot*.  The decision in *New Democratic Coalition* was released on June 19, 1972, and the plaintiffs in that case had sought the following injunctive relief:

> Plaintiffs have urged this Court to order that all state senators stand for election in the primary and general elections of 1972, and to declare that Const. 1963, Art. 4, s 2 and the statutes tied to it are unconstitutional insofar as they conflict with that order. Plaintiffs further urged this Court to order that those primary and general elections be carried out in the new state senate districts declared in effect by the Michigan Supreme Court on May 4, 1972.

*New Democratic Coalition*, 41 Mich. App. 345.  The injunctive relief sought by Plaintiff does not pose the same potential for creating "immense administrative difficulties for election officials" as the injunctive relief sought by the plaintiffs in *New Democratic Coalition*.  Moreover, Wayne County Intervenors have not articulated what change of material condition warrants the application of laches.  Therefore, the doctrine of laches does not bar Plaintiff's lawsuit.

## V.  Preliminary Injunction

When ruling on a motion for a preliminary injunction, a district court must consider and balance four factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others;

and (4) whether the public interest would be served by issuance of a preliminary injunction.

*McPherson v. Mich. High School Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997)

(en banc) (citing *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th

Cir. 1995)).  Plaintiff's motion for a preliminary injunction seeks to have the Court order

Defendant to:

> (1) restore the 2,053 stricken signatures to Plaintiff's petition; (2) declare the petition sufficient; and (3) call an election for the recall of Rep. Andy Dillon for the November 4, 2008 general election.

(Mot. for Prelim. Inj. 6.)

## A.    Likelihood of success on the merits

The First Amendment to the U.S. Constitution reads in part, "Congress shall make

no law . . . abridging the freedom of speech, . . . or the right of the people peaceably to

assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend.

I.  The Fourteenth Amendment secured these rights against the States.  *Thornhill v.

Alabama*, 310 U.S. 88, 95 (1940).  "One of the main interests embodied in the First

Amendment is that of a free, sovereign people using the power of persuasion, rather than

force, to govern itself."

*Citizens for Tax Reform v. Deters*, 518 F.3d 375, 379 (6th Cir. 2008).  "'The freedom of

speech and of the press guaranteed by the Constitution embraces at the least the liberty to

discuss publicly and truthfully all matters of public concern without previous restraint or fear

of subsequent punishment.'" *Meyer v. Grant*, 486 U.S. 414, 421 (1988) (quoting *Thornhill*, 310 U.S. at 101-102).

In *Meyer*, in the context of a challenge to restrictions on the circulation of an initiative petition, the Supreme Court stated that "the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer*, 486 U.S. at 421-22.   First Amendment protection for "'interactive communication concerning political change,'" such as petition circulation, is "'at its zenith.'"   *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 186-87 (1999) (quoting *Meyer*, 486 U.S. at 422, 425).   However, "'there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.'" *Id.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)).   "[T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *Tashjian v. Republican Party of Conn.,*  479 U.S. 208, 217 (1986).

### 1.    Michigan's Recall Process

Article II, section 8, of the Michigan Constitution of 1963 states that:

Laws shall be enacted to provide for the recall of all elective officers except judges of courts of record upon petition of electors equal in number to 25 percent of the number of persons voting in the last preceding election for the office of governor in the electoral district of the officer sought to be recalled. The sufficiency of any statement of reasons or grounds procedurally required shall be a political rather than a judicial question.

28

Mich. Const. art. II, § 8.  Chapter XXXVI of Chapter 168 of the Michigan Compiled Laws

sets forth the laws enacted pursuant to article II, section 8 of the Michigan Constitution.

Michigan Compiled Laws § 168.957 is part of Chapter XXXVI of Chapter 168.  Michigan

Compiled Laws § 168.957 sets forth the qualifications for individuals who circulate recall

petitions.  Michigan Compiled Laws § 168.957 states that:

> A person circulating a petition shall be a qualified and registered elector in the electoral district of the official sought to be recalled and shall attach thereto his certificate stating that he is a qualified and registered elector in the electoral district of the official sought to be recalled and shall state the city or the township wherein he resides and his post-office address; further, that signatures appearing upon the petition were not obtained through fraud, deceit, or misrepresentation and that he has neither caused nor permitted a person to sign the petition more than once and has no knowledge of a person signing the petition more than once; that all signatures to the petition were affixed in his presence; and that to the best of his knowledge, information, and belief, the signers of the petition are qualified and registered electors and the signatures appearing thereon are the genuine signatures of the persons of whom they purport to be. A person who knowingly makes a false statement in the certificate hereby required is guilty of a misdemeanor.

M.C.L. § 168.957.  Michigan law sets forth the following definition for "qualified elector"

as used in Chapter 168:

> The term "qualified elector", as used in this act, shall be construed to mean any person who possesses the qualifications of an elector as prescribed in section 1 of article 2 of the state constitution and who has resided in the city or township 30 days.

M.C.L. § 168.10.  Article II, section 1 of the Michigan Constitution provides that:

> Every citizen of the United States who has attained the age of 21 years, who has resided in this state six months, and who meets the requirements of local residence provided by law, shall be an elector and qualified to vote in any

29

election except as otherwise provided in this constitution. The legislature shall define residence for voting purposes.

Mich. Const. art. 2, § 1.  Two of the requirements imposed by M.C.L. § 168.957 are (1) that recall petition circulators must be registered to vote, and (2) recall petition circulators must be residents of the legislative district of the official to be recalled.  Plaintiff challenges these two requirements of M.C.L. § 168.957, but Plaintiff does not challenge the other requirements of M.C.L. § 168.957, such as the requirement that recall petition circulators certify that the signatures were not obtained through fraud, deceit, or misrepresentation.

## 2.    Core Political Speech

Defendant and Intervenors acknowledge that initiative petitions are core political speech, but nonetheless contend that recall petitions are not core political speech.  Defendant appears to contend that recall petitions are not core political speech because the right to recall elected officials is a right created by the Michigan Constitution and not a federal constitutional right.  However, as the Supreme Court explained in *Meyer* with respect to initiative petitions, the ability of a state to eliminate initiatives entirely does not include the lesser power of limiting the discussion of the political issues raised by initiative petitions. *Meyer*, 486 U.S. at 424-25.  Federal law does not mandate a right to recall elected officials, but as Michigan has recognized a right to recall elected officials, Michigan does not have unfettered authority to regulate the political speech associated with such recalls.

Defendant and Intervenors also contend that a recall petition is distinct from an initiative petition because a recall petition seeks to remove an official from office who was

already elected.  In *Families Against Incinerator Risk v. Haines*, No. 245319, 2004 WL 1698982 (Mich. Ct. App. July 29, 2004) (*per curiam*) (unpublished), the Michigan Court of Appeals held that M.C.L. § 168.957 did not violate the First Amendment based on a distinction between recall petitions and initiative petitions.   The *Families Against Incinerator Risk* decision based the distinction between recall petitions and initiative petitions in part on the fact that after the Supreme Court's decision in *Buckley,* the Michigan legislature amended the requirements for initiative petition circulators, but not for recall petition circulators. *Families Against Incinerator Risk*, 2004 WL 1698982, at *1-2. *See also* An act to reorganize, consolidate, and add to the election laws, § 544c, 1999 Mich. Pub. Acts 219.   The *Families Against Incinerator Risk* decision also noted the Michigan Constitution imposes different requirements on the number of signatures required for recall petitions and initiative petitions. *Families Against Incinerator Risk*, 2004 WL 1698982, at *2. *Families Against Incinerator Risk* was correct in noting that distinctions had been made by the Michigan legislature and in the Michigan Constitutions, but *Families Against Incinerator Risk* did not articulate a reason why the political speech associated with recall petitions is less than the core political speech associated with initiative petitions.   Therefore, the Court declines to follow *Families Against Incinerator Risk.*   Defendant and Intervenors also note that Plaintiff has not cited any cases explicitly holding that recall petitions are core political speech.   However, Plaintiff has directed the Court to *Deters* and *Chandler v. City of Arvada*, 292 F.3d 1236 (10th Cir. 2002), which both involved restrictions that applied to

31

initiative and recall petitions. *Deters*, 518 F.3d at 377; *Chandler*, 292 F.3d at 1239. Neither *Deters* nor *Chandler* contain any suggestion that recall petitions are subject to an analysis different from initiative petitions. Neither of those opinions has any language suggesting that the restrictions at issue in those cases would have been permissible if they only applied to recall petitions. Also, in *Lerman v. Board of Elections in City of New York*, 232 F.3d 135 (2d Cir. 2000), the Second Circuit reversed a district court that had distinguished between the type of speech associated with initiative petitions and candidate petitions. 232 F.3d at 148, 153. The Second Circuit explained that "[t]here is no basis to conclude that petition circulation on behalf of a candidate involves any less interactive political speech than petition circulation on behalf of a proposed ballot initiative-the nature of the regulated activity is identical in each instance." *Id.* at 148. Recall petitions involve speech against a candidate instead of on behalf of a candidate, but this change in viewpoint cannot lessen First Amendment protection

While Defendant and Intervenors have identified administrative concerns that may be unique to recall petitions, no party and no case cited by any party has articulated a reason for considering recall petitions as anything other than core political speech. *See Lerman*, 232 F.3d at 148 ("[T]the strength of the state's interest in preserving the integrity of the ballot access process itself is no greater when petition circulators advocate in behalf of particular candidates than it is when they advocate in behalf of ballot initiatives. The distinction between candidate and initiative elections, therefore, is not salient in this

32

context.").  The circulation of recall petitions involves the expression of a desire for political change in the form of removing a particular elected official from office.  The circulation of recall petitions also involves a discussion of the merits of the proposed change as those supporting the recall must articulate why the voters of a district ought to remove a political official who a majority of those voters previously elected.  The circulation of recall petitions is core political speech.

### 3.   Balancing of First Amendment and Michigan's Election Regulatory Interests

Plaintiff contends that limiting recall petition circulators to registered voters in her legislative district severely burdens her First Amendment rights.  Defendant contends that the limits on recall petition circulators are not severe and even if the limits are severe, the limits are narrowly tailored to ensuring the integrity of recall elections.  Constitutional challenges to state laws regulating petition circulators are analyzed under the framework the Supreme Court set forth in *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997):

> When deciding whether a state election law violates First and Fourteenth Amendment associational rights, we weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary.   Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest.  Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. No bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms.

*Deters*, 518 F.3d at 380 (quoting *Timmons*, 520 U.S. at 358-59).

### a.   Character and Magnitude of the Burden

Plaintiff contends that M.C.L. § 168.957 excludes 99% of the voter-eligible citizens in Michigan from circulating recall petitions in the 17th House District.   Defendant and Intervenors acknowledge that M.C.L. § 168.957 bars anyone who is not a registered voter and a resident of the 17th House District from being a recall petition circulator in the 17th House District, but do not acknowledge that those requirements exclude 99% of the voter-eligible citizens in Michigan.

Defendant contends that this is not a severe burden because of the number of signatures required to be gathered for a legislative recall petition is relatively small, so the number of petition circulators required is necessarily small.  In *Nader v. Brewer*, 531 F.3d 1028 (9th Cir. 2008), the Ninth Circuit addressed Arizona's requirement that petition circulators be qualified to register to vote in Arizona, but need not actually be registered to vote in Arizona.  531 F.3d at 1031, 1036.  The Arizona Secretary of State contended that this requirement was not severe because there were millions of individuals in Arizona who satisfied this requirement and therefore could serve as petition circulators.  The court in *Nader* rejected this contention because "significantly reducing the number of potential circulators imposed a severe burden on rights of political expression."  *Nader*, 531 F.3d at 1036 (citing *Buckley*, 525 U.S. at 194-95).  Similarly, in *Chandler* the Tenth Circuit explained that the requirement imposed by Arvada, Colorado that barred nonresident petition circulators imposed a severe burden on speech because the restriction limited the

"'quantum of speech'" by restricting the "'available pool of circulators . . . .'" *Chandler*, 292 F.3d at 1242 (quoting *Campbell v. Buckley*, 203 F.3d 738, 745 (10th Cir. 2000)). In *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000), the Seventh Circuit addressed Illinois's requirement that nominating petition circulators be registered to vote in the same political subdivision for which the candidate is seeking office. 226 F.3d 856. The court in *Krislov* explained that "even an election law which required a candidate to obtain only a relatively small number of signatures could still burden First Amendment rights if it also precluded the candidate from utilizing a large class of potential solicitors to convey his message, or if it substantially restricted the candidate's ability to choose the means of conveying his message." *Id.* (citing *Meyer*, 486 U.S. at 421-22). The court in *Krislov* concluded that "[b]y preventing the candidates from employing millions of potential advocates to carry their political message to the people of Illinois, the statute places a formidable burden on the candidates' right to disseminate their message." *Id.* (citing *Buckley*, 525 U.S. at 193 n.15).

Michigan Compiled Laws § 168.957 prevents Plaintiff from seeking assistance from the overwhelming majority of voter-eligible Michigan residents in circulating recall petitions against Representaive Dillon. While Defendant and Intervenors do not acknowledge that the 99% figure offered by Plaintiff is correct, the exclusion of voter-eligible Michigan residents from the 109 other Michigan House Districts, must result in the exclusion of at least 90% of the voter-eligible Michigan residents from circulating recall petitions in the 17th House District. In addition to this general numerical exclusion, Plaintiff has stated that

the in-district resident and registered voter requirements of M.C.L. § 168.957 "excludes a large portion of [her] own political associates (including some other activists who live in Wayne County and are involved with the Wayne County Taxpayers Association) whom I would trust and turn to for help in gathering signatures . . . ." (Bogaert Aff. ¶ 9.)  Based on the number of recall petition circulators excluded by the in-district resident and registered voter requirements of M.C.L. § 168.957, including the specific exclusion of the individuals with whom Plaintiff associates politically, the Court concludes that Plaintiffs' First Amendment rights are severely burdened by the requirements of M.C.L. § 168.957 that (1) recall petition circulators be registered to vote, and that (2) recall petition circulators be residents of the legislative district of the official to be recalled.  *Cf. Deters*, 518 F.3d at 385 ("This is not a case like in *Buckley* where approximately 35% of the state's population was categorically prohibited from participating." (citing *Buckley*, 525 U.S. at 193-94 & n. 15)).

**b.  Michigan's Election Regulatory Interests**

"When a State places a severe or significant burden on a core political right, like here, it faces a 'well-nigh insurmountable' obstacle to justify it."  *Deters*, 518 F.3d at 387 (quoting *Meyer*, 486 U.S. at 425).  As the Court has determined that the requirements of M.C.L. § 168.957 that (1) recall petition circulators be registered to vote, and that (2) recall petition circulators be residents of the legislative district of the official to be recalled impose a severe burden on Plaintiff's First Amendment rights, the Court must determine if those requirements are "narrowly tailored and advance a compelling state interest."  *Id.* (citing

*Timmons*, 520 U.S. at 358; *Meyer*, 486 U.S. at 423-24).  "Although a State need not present 'elaborate, empirical verification' of the weight of its purported justification when the burden is moderate, *see Timmons*, 520 U.S. at 364, it must come forward with compelling evidence when the burden is higher, *see Buckley*, 525 U.S. at 203-04; *Meyer*, 486 U.S. at 425-28."  *Deters*, 518 F.3d at 387.

Defendant contends that Michigan has an interest in the integrity of recall petitions, which Michigan assuredly does, but Defendant then contends that "[r]estrictions such as requiring recall petition signers and circulators to be registered and qualified electors of the district help ensure that recall attempts reflect the will of the electorate at the local level." (Def.'s Resp. 22.)  Defendant does not articulate how requiring recall petition circulators to be registered voters and district residents improves the integrity of recall petitions. Defendant also contends that the registered voter and district resident requirements are in response to a "heightened concern for fraud and abuse in the recall context . . . ."  (*Id.* at 23.) Defendant has not offered any evidence to support the contention that recall petitions are more susceptible to fraud than other forms of petitions.  Defendant does quote the following language from the Supreme Court: "The risk of corruption perceived in cases involving candidate elections, . . . simply is not present in a popular vote on a public issue."  *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 790 (1978) (citations omitted).  Defendant is correct that the Supreme Court has acknowledged that a state has regulatory interests with respect to the election of a candidate that are not present with respect to ballot initiatives, but

this is a regulatory interest linked to "the risk of '*quid pro quo*' corruption present when money is paid to, or for candidates." *Buckley*, 525 U.S. at 203 (citing *Meyer*, 486 U.S at 427-28). Defendant does not articulate how requiring recall petitions to be circulated by registered voters and district residents controls "*quid pro quo*" type corruption.

Representative Dillon does contend that registered voters and district residents are less likely to submit fraudulent signatures. Representative Dillon supports this contention with reference to alleged forged signatures gathered by some of the recall petition circulators who were employed by the effort sponsored by Plaintiff. According to Defendant, sixteen circulators[3] were involved in collecting the 2,053 signatures rejected based on M.C.L. § 168.957 because those circulators were either not registered to vote, not residents of the 17th House District, or both. (Def.'s Resp. Ex. 1, Thomas Aff. ¶ 7 & Ex. B - Analysis of Circulators.) Representative Dillon's challenges to the petition signatures identified eleven circulators[4] as having collected forged signatures. (Dkt. No. 9, Dillon's Ans., Ex. 1, Signature Challenges 2, 4.) Only three names appear on both lists. Thus, assuming that

---

[3]Defendant identified the following sixteen petition circulators as either not being registered to vote, not residents of the 17th House District, or both: Ahlam Awada, Kevin Bascomb Jr., Michael Bastianelli, Nicole Bastianelli, Dana Bryant, Rudolph Burnett Jr., Roger Christie, Wesley L. Gandy, Darrell Henning, Johnathan Hill, Fate Martin, Verna Price, Krystal Robinson, Michael Rutledge, George Shavers, and Jeremy D. Thomas. (Thomas Aff., Ex. B - Analysis of Circulators.)

[4]Representative Dillon's challenges submitted to the Secretary of State alleged that the following individuals as having collected forged signatures: Maureen Byrne, Roger Christie, Averil Dennis Jr., Larry Fairchild, Brandon Holder, Wendy Holder, Carolyn Lane, Raymond Larsch, Verna Price, Harvey Robinson, and Krystal Robinson. (Signature Challenges 2, 4.)

every signature identified by Representative Dillon was in fact forged and that every forgery was done by the petition circulator, eight of the eleven forgers were registered voters who resided in the 17th House District.  Based on this limited evidence, the Court cannot conclude that the registered voter and district resident requirements of M.C.L. § 168.957 are narrowly tailored to Michigan's legitimate interest in reducing election fraud.  *See Deters*, 518 F.3d at 387.

As the registered voter and district resident requirements of M.C.L. § 168.957 impose a substantial burden on Plaintiff's First Amendment rights and are not narrowly tailored to Michigan's compelling interest in the integrity of recall petitions and the combat of election fraud, the registered voter and district resident requirements of M.C.L. § 168.957 are unconstitutional as applied to the recall petition against Representative Dillon.

### 4.    The 2,053 Rejected Signatures

The recall petition against Representative Dillon was 776 signatures short of the 8,724 required to place the recall on the ballot.  (Letter from Terri Lynn Land, Mich. Sec'y of State, Mich. Dep't of State, to Matthew G. Davis (June 5, 2008) 2.)  Plaintiff contends that the 2,053 signatures rejected based on M.C.L. § 168.957 are "otherwise valid" and so it necessarily follows that without the rejections based M.C.L. § 168.957, the recall effort gathered the required 8,724 signatures.  As Defendant and Representative Dillon have indicated, this is not necessarily the case.  Christopher Thomas, who is the Director of the Bureau of Elections and Secretary to the Board of State Canvassers, states in an affidavit

submitted by Defendant that the review of the petition signatures occurred in the following sequence: (1) facial review, (2) registration verification, including the petition circulator requirements of M.C.L. § 168.957, (3) challenges from Representative Dillon, and (4) petitioner's rebuttals.  (Thomas Aff. ¶¶ 2, 5.)  With respect to the challenges from Representative Dillon, Mr. Thomas stated that: "Numerous challenges were not processed because they targeted petition signatures that were already found invalid under the face review or the registration verification."  (*Id.* at ¶ 5.).  With respect to the 2,053 signatures rejected based on M.C.L. § 168.957, Mr. Thomas specifically stated that "the challenges for duplicate and falsified signatures were not processed for any of the 2,053 signatures affixed to sheets circulated by individuals who were not qualified to collect signatures." (*Id.* at ¶ 6.) Without consideration of the registered voter and district resident requirements of M.C.L. § 168.957, the recall effort against Representative Dillon may have gathered the 8,724 required, but based on the present record the Court cannot make that determination.

**B.      Irreparable injury**

Plaintiff contends that in the absence of a preliminary injunction she will suffer irreparable injury to her First Amendment rights.  Plaintiff contends that the recall effort animates political change and preventing the recall from appearing on the November 4, 2008, general election ballot will render Plaintiff's efforts and the signatures of those who signed the recall petition a nullity.  Apart from the recall, Representative Dillon will be up for reelection on the November 4 ballot.  Plaintiff contends that the recall will be meaningful

even if Representative Dillon is reelected because if the recall passes Representative Dillon would cease to hold office until his new term starts.

Until the signatures on the filed recall petitions are examined without consideration of the registered voter and district resident requirements of M.C.L. § 168.957, it will remain unknown whether the recall effort gathered the required 8,724 signatures. If, without the registered voter and district resident requirements of M.C.L. § 168.957, the recall effort gathered 8,724 valid signatures, then Plaintiff would suffer an irreparable injury if the recall against Representative Dillon is not placed on the November 4, 2008, general election ballot. If 8,724 valid signatures were gathered, then Plaintiff successfully exercised her First Amendment rights in furtherance of the recall process recognized by article II, section 8, of the Michigan Constitution. Assuming that 8,724 valid signatures were gathered, then failing to place the recall on the ballot would deny the effect of Plaintiff's First Amendment speech and associations and would also deny those 8,724 valid signatures of any effect.

## C.    Substantial harm to others

Plaintiff contends that the preliminary injunction would not cause substantial harm to others because Defendant has already reviewed the recall petition signatures and the recall would be placed on the November 4, 2008, general election ballot. Plaintiff contends that based on these two circumstances no additional expenses will be incurred as a result of the preliminary injunction. As the Court has determined that Defendant will need to re-examine the signatures, some expenditure of resources will be necessary. However, neither

41

Defendant nor Wayne County Intervenors have contended that expending the resources required for such a re-examination would cause them substantial harm. Defendant contends that recalling Representative Dillon would cause substantial harm to the State. Any such harm would not accrue from the preliminary injunction. If Defendant determines without consideration of the registered voter and district resident requirements of M.C.L. § 168.957 that 8,724 valid signatures were gathered and Representative Dillon is subject to a recall election, any harm he would be subject to is the product of the recall process in article II, section 8 of the Michigan Constitution and 25% of the registered voters in Representative Dillon's district having validly signed the recall petition. If Representative Dillon is in fact recalled, that harm to him or to the State is the product of article II, section 8 of the Michigan Constitution and a majority of the voters in the 17th House District who vote on November 4, 2008, voting to recall him. At the preliminary injunction hearing Defendant raised the prospect of a successful recall of Representative Dillon detrimentally affecting the State because he is Speaker of the State House. But the Michigan Constitution provides for a recall process and makes no exception for elected officials in positions such as Representative Dillon. Thus, the only substantial harm to others that could accrue from granting a preliminary injunction requiring a re-examination of the filed signatures is inherent to Michigan's recall process and consequently cannot weigh against the granting of a preliminary injunction.

42

D.    **Public interest**

Plaintiff contends that the public interest would be served by the issuance of a preliminary injunction because the injunction would vindicate First Amendment rights.  In a "First Amendment case, 'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits.  This is so because . . . the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the statute.'"  *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000)).  With respect to the registered voter and district resident requirements of M.C.L. § 168.957, Plaintiff has demonstrated a likelihood of success on the merits.  Defendant contends that the public interest would not be served because the recall election would be disruptive to the electoral process.  As the Court explained in the substantial harm to others analysis, disruption is inherent in Michigan's recall process and/or arises from the will of the registered voters of the 17th House District.  Therefore, the granting of a preliminary injunction requiring a re-examination of the filed signatures is in the public interest.

In balancing the four preliminary injunction factors, the Court concludes that a preliminary injunction ordering Defendant to re-examine the filed signatures without consideration of the M.C.L. § 168.957 requirements that (1) recall petition circulators be registered to vote, and that (2) recall petition circulators be residents of the legislative district of the official to be recalled, is warranted.  If upon completion of such a re-examination,

Defendant determines that the required 8,724 valid signatures were gathered, then the recall against Representative Dillon shall be placed on the November 4, 2008, general election ballot in the 17th House District.

## E.    Security Bond

Rule 65(c) provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  "While . . . the language of Rule 65(c) appears to be mandatory, and many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), and *Urbain v. Knapp Bos. Mfg. Co.*, 217 F.2d 810, 815-16 (6th Cir. 1954)).   Defendant, Wayne County Intervenors, and Representative Dillon have not sought a security bond.  As no security bond has been requested, the Court concludes that no security bond is necessary.

## VI.  Conclusion

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is granted in part and denied in part.  Plaintiff's motion is granted as to the unconstitutionality of the M.C.L. § 168.957 requirements that (1) recall petition circulators be registered to vote, and that (2) recall petition circulators be residents of the legislative district of the official to be

recalled. Plaintiff's motion is denied as to the Court ordering that the recall election against Representative Dillon be placed on the November 4, 2008, general election ballot. Whether the recall election against Representative Dillon is placed on the November 4 ballot will be determined by Defendant's re-examination of the filed signatures without consideration of the unconstitutional components of M.C.L. § 168.957. A preliminary injunction consistent with this opinion will be entered.


Dated: <u>August 27, 2008</u>                    <u>/s/ Robert Holmes Bell</u>
                                      ROBERT HOLMES BELL
                                      UNITED STATES DISTRICT JUDGE