UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSE BOGAERT,

        Plaintiff,

File No. 1:08-CV-687

v.

HON. ROBERT HOLMES BELL

TERRI LYNN LAND, in her official
capacity as Michigan Secretary of State,

        Defendant.
                                      /

## **O P I N I O N**

Plaintiff Rose Bogaert was the sponsor of an effort to place a recall vote against State Representative Andrew Dillon on the November 4, 2008, general election ballot. Defendant Terri Lynn Land, in her capacity as Michigan Secretary of State, after striking signatures from Plaintiff's petitions that were gathered in violation of Michigan's district residency requirement, Mich. Comp. Laws § 168.957, determined that Plaintiff's recall effort did not gather a sufficient number of signatures to be placed on the general election ballot. Plaintiff filed this action under 42 U.S.C. § 1983, alleging that the Secretary violated Plaintiff's First Amendment rights by enforcing the district residency requirement and striking the signatures from Plaintiff's recall petitions. Plaintiff sought damages, preliminary and permanent injunctive relief, and a declaratory judgment that the district residency requirement is unconstitutional.

On August 27, 2008, this Court determined that Plaintiff had a substantial likelihood of prevailing on the merits of her First Amendment claim, and entered a preliminary injunction requiring the Secretary of State to re-examine the recall petition without consideration of the residency and registration requirements of Mich. Comp. Laws § 168.957. (Dkt. No. 38, Prelim. Inj. Order.) Intervenors Andrew Dillon, Wayne County Clerk and the Wayne County Election Commission were dismissed from this action by order dated April 14, 2009. (Dkt. No. 65, Order.) Plaintiff's claims against Defendant Terri Lynn Land in her individual capacity and Plaintiff's claims for money damages were subsequently dismissed on stipulation of the parties. (Dkt. No. 68, Stip. & Order.) The parties have now submitted this matter to the Court on the current record for a final decision on Plaintiff's claim that the residency and registration requirements are unconstitutional. (Dkt. No. 69, Stip. & Order.) Plaintiff requests the Court to enter a declaratory judgment and permanent injunction. (Dkt. No. 70.) Defendant has moved to dismiss the action for lack of subject matter jurisdiction and on the merits of Plaintiff's constitutional claim. (Dkt. No. 71.)

**I.**

Defendant's motion to dismiss raises four challenges to the Court's subject-matter jurisdiction based on application of the *Rooker-Feldman* doctrine, the doctrine of preclusion, the *Burford* abstention doctrine, and the Declaratory Judgment Act.

## A. *Rooker-Feldman* Doctrine

Defendant's first argument is that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine because the source of Plaintiff's injury is a series of state-court proceedings that are judicial in nature and Plaintiff's federal action does not assert any independent claims.

In the opinion on Plaintiff's motion for preliminary injunction this Court rejected Defendant's *Rooker-Feldman* argument because the *Rooker-Feldman* doctrine does not apply to proceedings before the Secretary of State, and because the source of Plaintiff's injury was Defendant's rejection of the signatures rather than the state court orders. (Dkt. No. 37, Op. 17-21.) In her motion to dismiss Defendant reasserts the same arguments she presented in opposition to Plaintiff's motion for preliminary injunction. Defendant has not shown that this Court's previous analysis was erroneous. The Court stands by its previous analysis of Defendant's *Rooker-Feldman* doctrine argument. Rather than reiterating that analysis herein, the Court reaffirms and adopts that analysis by reference and holds that Plaintiff's claim is not barred by the *Rooker-Feldman* doctrine. (Dkt. No. 37, Op. 17-21.) *See also Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003) (holding that the *Rooker-Feldman* doctrine "does not prohibit federal courts from exercising jurisdiction where the plaintiff's claim is merely 'a general challenge to the constitutionality of the state law applied in the state action' rather than a challenge to the law's application in a particular state case.") (quoting *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002)).

**B. Doctrine of Preclusion**

Defendant's second argument is that Plaintiff's claims are barred by both res judicata and collateral estoppel. Defendant acknowledges that the Court has already rejected her arguments that the preclusion doctrines bar this action. (Dkt. No. 37, Op. 21-24.) Defendant nevertheless reasserts those arguments and asks the Court to reconsider her argument that Plaintiff Bogaert is in privity with the plaintiffs in *Ebbers v. Secretary of State*.

According to Defendant, the Court should find that Plaintiff was in privity with the plaintiffs in *Ebbers* because *Ebbers* also involved an effort to recall a state representative; *Ebbers* raised the same constitutional challenge to the registration and residency requirements of § 957; the *Ebbers* plaintiffs were represented by the same attorney as Plaintiff; the Michigan Recall Committee was a major in-kind contributor to both recall efforts; and the Michigan Recall Committee hired the same Georgia signature collection firm to supervise both petition drives. Defendant contends that in light of these similarities and ties, Plaintiff's interests were adequately represented in the *Ebbers* case.

The Court has already considered the same arguments and the same evidence in its opinion on Plaintiff's motion for preliminary injunction. (Dkt. No. 37.) Nothing Defendant has argued with respect to the issue of privity compels a different result. "To be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004). "The outer limit of the doctrine traditionally requires both a 'substantial

identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." *Id.* (quoting *Baraga Co. v. State Tax Comm'n*, 645 N.W.2d 13, 16 (Mich. 2002)).

Both the *Ebbers* plaintiffs and Plaintiff in the instant case challenged the constitutionality of the district residency and registration requirements of § 957. However, the *Ebbers* plaintiffs sought injunctive relief in advance of gathering signatures, while Plaintiff sought restoration of signatures that had been stricken after a completed signature drive. Although they were on the same side of an abstract legal argument, the *Ebbers* plaintiffs did not represent the same legal right that Plaintiff is asserting, and they were not in a position to present or protect the interests of Plaintiff.

Having reconsidered the issue of privity, the Court stands by its previous analysis of Defendant's preclusion doctrine arguments. Rather than reiterating that analysis herein, the Court reaffirms and adopts that analysis by reference and holds that Plaintiff's claim is not barred by preclusion doctrines. (Dkt. No. 37, Op. 21-25.)

## C. *Burford* Abstention Doctrine

Defendant's third challenge to the Court's subject-matter jurisdiction is based on her contention that the Court should abstain from exercising jurisdiction under the *Burford* abstention doctrine. *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Defendant failed to raise this argument in response to Plaintiff's motion for preliminary injunction, so it has not yet been addressed by the Court.

The Supreme Court has summarized the *Burford* abstention doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

Defendant contends that the Court should abstain from deciding this case because adequate state-court review is available, and federal review would be disruptive of Michigan's efforts to establish a coherent policy as to recall-petition circulation. The policy at issue, according to Defendant, is the Michigan Legislature's election to distinguish between initiative-petition circulation and recall-petition circulation.

"Abstention is 'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 625 (6th Cir. 2009) (quoting *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l., Ltd.*, 556 F.3d 459, 467 (6th Cir.2009)). The Supreme Court has stated that it is "particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." *Houston v. Hill*, 482 U.S. 451, 467 (1987); *see also Felmeister v. Office of Attorney Ethics*, 856 F.2d 529, 534 (3d Cir. 1988) (expressing "serious doubts as to whether

*Burford* abstention ever would be appropriate where substantial first amendment issues are raised").

Defendant's assertion that Michigan courts are capable of handling constitutional questions does not suggest a basis for abstention. Moreover, contrary to Defendant's assertions, the fact that the Michigan legislature has chosen to distinguish between recall petitions and initiative petitions does not suggest that federal review would be disruptive to Michigan's efforts to establish a coherent policy as to recall-petition circulation. Federal review might be disruptive if it led to an inconsistent application of state law. Federal review of Plaintiff's challenge to § 957 does not raise this danger. Federal review will simply determine whether Michigan's policy is consistent with First Amendment requirements. That is not the kind of disruption of state efforts that *Burford* is designed to avoid. *See Morrill v. Weaver*, 224 F. Supp. 2d 882, 895 n.15 (E.D. Pa. 2002) (noting that *Burford* abstention was "wholly inapplicable" to a First Amendment challenge to district residency requirement for nominating petition circulators); *Kansas for Life, Inc. v. Gaede*, 38 F. Supp. 2d 928, 934 (D. Kan. 1999) (holding that *Burford* abstention was not appropriate in a First Amendment challenge to state campaign finance laws). Accordingly, the Court denies Defendant's request for abstention under the *Burford* abstention doctrine.

## D. Discretionary Nature of Declaratory Relief

Finally, Defendant contends that the Court, in the exercise of its discretion, should decline to exercise jurisdiction over Plaintiff's claim for declaratory relief.

The Declaratory Judgment Act permits the Court, in a case of actual controversy within its jurisdiction, to declare the rights of any interested party seeking such declaration. 28 U.S.C. § 2201; *Public Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 241 (1952) (holding that the Declaratory Judgment Act confers discretion on courts to fashion a remedy, rather than an absolute right upon the litigant). The following factors are relevant to the determination of whether a case is appropriate for declaratory judgment:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004) (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)).

Defendant contends that the Court should decline to exercise jurisdiction because a declaratory judgment would not settle this controversy or clarify the legal relations of the parties, and because a declaratory judgment would only increase friction between the state and federal systems since the legislature chose to enact separate provisions for initiative and recall-petition circulation.

The Court is not persuaded by either of Defendant's arguments. First, the fact that the recall election is over does not render Plaintiff's request for declaratory relief moot. The Sixth Circuit itself noted that its dismissal of Defendant and Intervening Defendants'

preliminary injunction appeals did not render moot the underlying district court litigation. *Bogaert v. Land*, 543 F.3d 862, 864 (6th Cir. 2008). There is still an actual case or controversy before this Court. Plaintiff still has an interest in establishing the unconstitutionality of the district residency and registration requirements of § 957 because they may impact Plaintiff's future recall drives. *See FEC v.Wis. Right to Life, Inc.*, 551 U.S. 449, 462-63 (2007) (characterizing group's challenge to campaign finance laws as capable of repetition yet evading review, where group asserted that it would run similar ads in future elections); *Suster v. Marshall*, 149 F.3d 523, 527 (6th Cir. 1998) (holding that a challenge to restrictions on the expenditure of funds to judicial campaigns was not rendered moot by the election, as candidates claimed they would run again). Moreover, a federal court's ruling on the constitutionality of a state law does not create the kind of friction between the state and federal systems that courts should avoid.

A declaratory judgment on the constitutionality of the district residence and registration requirements would clarify the law and settle the controversy between the parties. The remedy is not being sought for an ulterior purpose, it would not improperly encroach on state jurisdiction, and there is no more effective alternative remedy. The Court is accordingly satisfied that this is an appropriate case for declaratory relief.

## II.

Defendant contends that even if the Court exercises subject matter jurisdiction in this case, Plaintiff is not entitled to permanent injunctive relief because she has not demonstrated

9

irreparable harm, either in the recall that was at issue in this case, or in future recall-petition efforts, and because the balancing of the hardships favors Defendant.

Defendant contends that Plaintiff has not demonstrated that she will be irreparably harmed if a permanent injunction does not issue because the recall election has already occurred and Rep. Dillon has already been reelected.

The Court agrees that Plaintiff is not entitled to a permanent injunction, but on different grounds than those suggested by Defendant. In her complaint, Plaintiff sought a declaration that § 957 is unconstitutional. However, the only injunctive relief she sought was an order enjoining Defendant to restore the 2,053 otherwise-valid signatures Defendant struck from Plaintiff's petition, to declare the petition sufficient, and to call an election for the recall of Rep. Dillon for the November 4, 2008, general election. Plaintiff has already received all of the injunctive relief she requested.

Plaintiff now requests an order permanently enjoining the Secretary from enforcing or implementing the requirements in § 957 that recall-petition circulators be registered to vote and be residents of the legislative district of the official to be recalled. Plaintiff's request exceeds the scope of the relief requested in her complaint. Moreover, such permanent injunctive relief is not necessary. The Court assumes that the Secretary will follow the law, and the Court will not enjoin the Secretary from enforcing statutory provisions that the Court has declared are unconstitutional.

**III.**

On the merits of this action, Plaintiff seeks a final judgment in her favor declaring that the district residency and registration requirements of § 957 of the Michigan Election Law, Mich. Comp. Laws § 168.957, are unconstitutional. Defendant has moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) for failure to state a constitutional claim on which relief may be granted.

In evaluating a motion to dismiss under Rule 12(b)(6), the court must "accept as true all non-conclusory allegations in the complaint and determine whether they state a plausible claim for relief." *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949-50 (2009)).

Section 957 requires a person circulating a recall petition to be "a qualified and registered elector in the electoral district of the official sought to be recalled."[1] Mich. Comp. Laws § 168.957. In other words, the statute requires recall-petition circulators to be both residents of, and registered to vote in, the district of the official to be recalled. (Dkt. No. 37,

---

[1] Section 957 provides in pertinent part:

> A person circulating a petition shall be a qualified and registered elector in the electoral district of the official sought to be recalled and shall attach thereto his certificate stating that he is a qualified and registered elector in the electoral district of the official sought to be recalled and shall state the city or the township wherein he resides and his post-office address . . . . A person who knowingly makes a false statement in the certificate hereby required is guilty of a misdemeanor.

Mich. Comp. Laws § 168.957.

Op. 29-30.) This Court held in its opinion on the motion for preliminary injunction that Plaintiff had a substantial likelihood of prevailing on the merits because recall-petition speech is core political speech, it is subject to strict scrutiny, and the district residency and registration requirements are not narrowly tailored to achieve Michigan's compelling interest in the integrity of recall petitions and the combat of election fraud. (Dkt. No. 37, Op. 30-39.)

For purposes of her motion to dismiss, Defendant does not challenge this Court's prior determination that recall-petition speech is core political speech. However, she does challenge the Court's determination that the restrictions in § 957 are subject to strict scrutiny. Defendant contends that even if recall-petition circulation is core political speech, the district residency and registration restrictions in § 957 are not severe and are justified by the state's interests. Defendant also contends that the Court should conduct a separate analysis of the burdens and justifications involved in the registered voter requirement and the district residency requirement.

In *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997), the Supreme Court held that in determining whether an election law violates the First Amendment a court should weigh the burden of the restriction against the State's interests:

> Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.

*Id*. at 358 (internal quotations and citations omitted); *see also Citizens for Tax Reform v. Deters*, 518 F.3d 375, 387 (6th Cir. 2008) ("Although a state need not present 'elaborate,

empirical verification' of the weight of its purported justification when the burden is moderate, it must come forward with compelling evidence when the burden is higher.") (citations omitted).

This Court's previous determination that § 957 posed a severe burden on recall-petition circulators was based on a consistent line of federal cases that have concluded that residency or registration restrictions on petition circulators pose a severe burden on core political speech and are subject to strict scrutiny. (Dkt. No. 37, Op. 34-36.) *See Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 194 (1999); *Nader v. Brewer*, 531 F.3d 1028, 1036 (9th Cir. 2008); *Chandler v. City of Arvada,* 292 F.3d 1236, 1242 (10th Cir. 2002); *Lerman v. Bd. of Elections*, 232 F.3d 135, 149 (2d Cir. 2000); *Krislov v. Rednour*, 226 F.3d 851, 860 (7th Cir. 2000). Subsequent to this Court's opinion on the preliminary injunction motion, the Sixth Circuit issued its opinion in *Nader v. Blackwell*, 545 F.3d 459 (6th Cir. 2008), in which it joined the other federal circuits in extending the principles established in *Buckley* regarding initiative-petition circulators to candidate-petition circulators. *Id*. at 475-76 (applying strict scrutiny and holding that Ohio's registration and residency requirements for candidate-petition circulators violated the First Amendment). *See also Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023 (10th Cir. 2008) (applying strict scrutiny to analyze Oklahoma's ban on non-resident initiative-petition circulators).

Defendant does not dispute that, under the established case law, the § 957 residency and registration requirements would be severe as applied to candidate-petition circulators and

initiative-petition circulators. Defendant contends, however, that the same residency and registration requirements pose less of a burden on recall-petition circulators than on initiative-petition or candidate-petition circulators. Recall is the process of calling for a vote on whether a popularly elected official should be removed from office by the same voters who elected the official in the first place. Defendant contends that its residency and registration restrictions pose less of a burden on recall-petition circulators because recall-petition circulation involves a considerably smaller audience, familiarity on the part of that audience with both the issues and the elected official, and a distinctly different and less communicative purpose than initiative- or candidate-petition circulation. Defendant also contends that a recall petition is focused on a single issue, and the recall petition itself informatively presents the issue of the conduct of the officer to prospective petition signers.

Defendant's attempt to distinguish recall-petition circulation from other forms of petition circulation is not persuasive. Contrary to Defendant's suggestion, the proposition that the registration and residency requirements pose only a moderate burden on recall-petition circulators is not simply a matter of common sense. In fact, the existing case law and common sense tend to refute Defendant's argument for distinguishing recall petitions from initiative or candidate petitions.

In *Nader v. Blackwell*, the Sixth Circuit extended the principles established in *Buckley* regarding initiative-petition circulators to candidate-petition circulators because both initiative-petition circulators and candidate-petition circulators "seek ballot access." *Id*. at

475 (quoting *Buckley*, 525 U.S. at 191.) Using the same reasoning, recall-petition circulators resemble both initiative-petition circulators and candidate-petition circulators because they similarly seek ballot access.

Overall, the Court finds that the distinctions between the various kinds of petition circulators are not of great significance to the analysis of the burdens posed by registration and residency requirements. *See Krislov*, 226 F.3d at 861 (finding the distinctions between initiative petitions and candidate petitions to be of no particular relevance). Moreover, to the extent the differences are relevant, it appears that they tend to show that the burdens weigh just as heavily, if not more heavily, on recall-petition circulators as they do on initiative- or candidate-petition circulators.

In *Nader* the Sixth Circuit noted that candidate-petition circulators may engage in even more interactive political speech than initiative-petition circulators:

> Indeed, common sense suggests that, in the course of convincing voters to sign their petitions, candidate-petition circulators engage in at least as much "interactive political speech" – if not more such speech – than initiative-petition circulators.

*Nader v. Blackwell*, 545 F.3d at 475. Similarly, in *Krislov*, the Seventh Circuit noted that the burden on the candidate-petition circulator is even greater than the burden on the initiative-petition circulator because "the ballot initiative proponent will generally seek support for the one narrow issue presented in the initiative, while the typical candidate embodies a broad range of political opinions, and thus those who solicit signatures on their behalf must speak to a broader range of political topics." 226 F.3d at 861.

The same analysis applies to recall petitions. Notwithstanding Defendant's presumptions to the contrary, case law and common sense suggest that recall-petition circulators, like candidate-petition circulators, must similarly be able to speak to a broad range of political topics. Although a single issue might trigger the recall effort, the official who is the subject of the recall petition embodies a broad range of political opinions, and has voted on any number of political issues. Thus, the circulator of the recall petition must be able to explain why the official's vote on one issue was more important than his performance in other areas. Moreover, Defendant's argument ignores the established principle that the relevant inquiry is not the size of the audience, but the decrease in the number of circulators available to the proponent and the concomitant inability of the proponent to choose the means of conveying his message. (Dkt. No. 37, Op. at 34-35 (citing cases).) Even though the audience is smaller when the arena is a district and not a state, the burden on petition proponents may well be increased by constricting the arena from which he can choose and recruit his circulators. The Court finds that the registration and residency restrictions for recall-petition circulators are just as burdensome as the unquestionably unconstitutional registration and residency restrictions on initiative- and candidate-petition circulators because the restrictions substantially decrease the pool of potential circulators.

The Court rejects Defendant's contention that the severity of the burden should be considered separately for the registration requirement and the residency requirement. Section 957's registration and residency requirements are interrelated, and it is proper to review them

16

together. *See Nader v. Blackwell*, 545 F.3d at 474 (noting that Ohio's registration and residency requirements were separate but interrelated, and deciding to address them together). Furthermore, separately analyzing each requirement would not change the result in this case. Each requirement, standing alone, operates to substantially decrease the pool of potential circulators. *See Buckley*, 525 U.S. at 194.

None of Defendant's arguments convince this Court that its previous determination that the registration and residency requirements of § 957 impose a substantial burden on Plaintiff's First Amendment rights and are not narrowly tailored to Michigan's compelling interest in the integrity of recall petitions and the combat of election fraud was erroneous. The Court stands by its previous analysis. Rather than reiterating that analysis herein, the Court reaffirms and adopts that analysis by reference and declares that the requirements in Mich. Comp. Laws § 168.957 that recall-petition circulators be registered to vote and be residents of the legislative district of the official to be recalled are unconstitutional as a violation of the First Amendment of United States Constitution, applicable to the State of Michigan through the Fourteenth Amendment. (Dkt. No. 37, Op. 33-39.)

An order and judgment consistent with this opinion will be entered.


Dated: December 17, 2009                          /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE